**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESUS GUADALUPE OREA RUIZ,<br>Petitioner,<br>v.<br>ACTING WARDEN, Adelanto Detention Center, et al.,<br>Respondents. | Case No. 5:26-cv-04807-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Jesus Guadalupe Orea Ruiz, a native and citizen of Mexico, is currently in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Orea Ruiz entered the United States without inspection approximately 19 years ago. During his time in the United States, Petitioner has maintained stable employment, provided for his family, and developed deep community ties. On July 21, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Mr. Orea Ruiz as he was

walking to his car near his home and later transported him to Adelanto Detention Facility, where he remains today.

Mr. Orea Ruiz filed the instant habeas Petition on August 23, 2026. In the Petition, he argues that his sudden detention and continued confinement violate the Fourth Amendment, procedural due process, and is unlawful under various immigration statutes and regulations. Additionally, Petitioner alleges that the conditions of his confinement violate Section 504 of the Rehabilitation Act. Respondents filed an Answer in which they concede that Petitioner is eligible to request a bond hearing but oppose any further relief. Respondents do not substantively address the merits of Petitioner's claims.

For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government knowingly violated his rights as a member of the certified class in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) and denied him the procedural protections to which he is entitled under Section 1226(a).

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Jesus Guadalupe Orea Ruiz is a native and citizen of Mexico. Dkt. 1 at 5. He entered the United States without inspection approximately 19 years ago. *Id.* Since then, Petitioner has remained in the United States, maintained stable employment, and supported his spouse and step-daughter, who is a United States citizen. *Id.* Petitioner's step-daughter suffers from a severe form of depression. *Id.*

On July 21, 2026, Petitioner was walking to his car near his home when two unmarked cars blocked him. *Id.* at 6. Several masked officers jumped out from the cars and accosted Petitioner, asking him if he "had papers." *Id.* Without allowing Petitioner an opportunity to respond, the officers handcuffed

Petitioner and took him into custody. *Id.* At the time Petitioner was taken into custody, the officers did not have an I-200 warrant or a lawfully issued Notice to Appear. *Id.*

On or about July 27, 2026, Respondents filled a Notice to Appear ("NTA") charging Petitioner as inadmissible pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), which deems inadmissible those "present without being admitted or paroled who arrived at a place and time other than as designated by the Attorney General." *Id.* Petitioner's custody status was summarily continued without individualized consideration. *Id.* Respondents have refused to release Petitioner or provide reasons for his continued detention, asserting that he is subject to mandatory detention under Section 1225(b).

Petitioner filed the instant habeas petition on July 23, 2026. Dkt. 1. In the Petition, Mr. Orea Ruiz alleges his arrest violated the Fourth Amendment, his sudden detention and continued confinement violate due process, 8 U.S.C § 1226(a), and various other immigration statutes and regulations. *Id.* at 10-17. Petitioner also alleges that the conditions of his confinement violate the Rehabilitation Act. *Id.* at 17-18. On August 25, 2026, the Court issued Notice of General Order 26-05 and Briefing Schedule. Dkt. 5.

Respondents filed a timely Answer to the Petition on September 1, 2026. Dkt. 7. In their answer, Respondents concede Mr. Orea Ruiz is eligible for a bond hearing under 8 U.S.C. § 1226(a) pursuant to *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026) (affirming *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025)). Respondents oppose any further relief. Petitioner filed a timely Reply on September 3, 2026. Dkt. 9. The parties have consented to the jurisdiction of the undersigned Magistrate Judge. Dkt. 8.

## II. DISCUSSION

This habeas case is the product of the Government's noncompliance with the class-wide relief and final judgment entered in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). On December 18, 2025, District Judge Sunshine S. Sykes granted the petitioners' motions for partial summary judgment and classwide certification, declared unlawful the Government's policy of detaining individuals like Petitioner—who entered without inspection—under 8 U.S.C. § 1225(b), and vacated DHS policy implementing its incorrect interpretation of the immigration laws. Under Judge Sykes' order, class members like Petitioner should be subject to the detention and release authority of 8 U.S.C. § 1226(a), under which they are eligible for certain procedural protections including a bond hearing before an Immigration Judge ("IJ"). Nonetheless, for nearly a year after Judge Sykes issued her order, the Government continued to arrest and detain *Maldonado Bautista* class members under the putative authority of Section 1225(b) and deny them the benefits to which they are entitled under the *Maldonado Bautista* final judgment. As in this case, the Government readily concedes its actions are unlawful once a class member files a habeas petition challenging their continued detention under Section 1225(b).

Because the parties agree that Petitioner is being detained unlawfully, the primary issue for the Court to decide is the appropriate remedy for the Government's violation of Petitioner's rights. Respondents argue that the Court should only grant the relief they should have already provided to Petitioner: a bond hearing under Section 1226(a). Petitioner argues that due process principles, as well as Section 1226(a), require his outright release. Following the decisions of courts across the Ninth Circuit that have

considered this issue, the Court concludes that Petitioner is entitled to release due to the Government's intentional violations of his statutory and constitutional rights.

### A. Petitioner's Detention Violates *Maldonado Bautista*

Petitioner argues that he is entitled to release because, *inter alia*, the Government wrongly detained him under the putative authority of 8 U.S.C. § 1225(b). Dkt. 1 at 15. Petitioner alleges that the Government is doing so "in violation of settled and binding precedent." *Id.* at 6. Respondents concede that Petitioner "appears to be entitled to request and receive an initial bond hearing" pursuant to the Ninth Circuit's recent decision, *Rodriguez Vazquez*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), (Dkt. 7). *Rodriguez Vazquez* affirmed the substance of the *Maldonado Bautista* class-wide judgment. As such, the Government has wrongly detained Petitioner under Section 1225, in violation of the *Maldonado Bautista* final judgment and Section 1226(a).

To explain why this is so, the Court briefly reviews the two statutes of detention at issue—Section 1226 and Section 1225—and the litigation in *Maldonado Bautista*. The Court then concludes that Respondents' violation of Petitioner's rights under *Maldonado Bautista* entitles him to release.

#### 1. Detention under Section 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b).[1] The

---

[1] DHS officers have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape

Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id*. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id*. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id*. The noncitizen may also seek judicial

---

before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and if they are subject to Section 1226, referred for a custody determination "48 hours of the arrest" absent an emergency or other extraordinary circumstances, *id*. at § 287.3(d).

review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**2. DHS's Policy Change and the *Maldonado Bautista* Final Order and Judgment**

Until recently, it had been the Government's longstanding position that individuals like Petitioner—who entered the United States without inspection, but were later apprehended in the interior of the country—were subject to the detention and release authority of Section 1226. However, the Government now takes a different position. On July 8, 2025, DHS issued a notice entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which it announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (quoting July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United

States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." *Id*. The BIA has since issued a decision agreeing with DHS's position that such individuals are properly subject to Section 1225(b). *See Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

While Section 1225(b)(2) states that applicants for admission "shall" be detained, they nonetheless "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" under the authority of Section 1182(d)(5)(A). *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Parole determinations are conducted by DHS officers pursuant to standards laid out in DHS policy, and the grant rates for parole have significantly fluctuated over time. *See generally* 8 C.F.R. § 212.5(a); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 323-25 (D.D.C. 2018). The immigration courts have no authority to review parole determinations by DHS officers. *See Matter*

*of Yajure Hurtado*, 29 I. & N. Dec. at 219 n.4 (whether a noncitizen "might be subject to parole by the Attorney General or DHS . . . is not an issue that the Immigration Judge has authority to consider"). Further, the immigration courts lack the authority to hold a bond hearing for applicants for admission detained under Section 1225(b). *See Jennings*, 583 U.S. at 297-300.

DHS's new policy has engendered an enormous amount of litigation in courts across the country, including the class action in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). In *Maldonado Bautista*, on December 18, 2025, District Judge Sunshine S. Sykes granted the petitioners' motions for partial summary judgment and class-wide certification, declared unlawful the Government's policy of detaining individuals like Petitioner under 8 U.S.C. § 1225(b), and vacated DHS policy implementing its incorrect interpretation of the immigration laws. The certified "Bond Eligible Class" is comprised of noncitizens "without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id*. at 1025. The court issued a class-wide declaration that the Government's new policy with respect to class members violated the INA and due process and vacated the DHS policy, as contrary to law. *Id*. at 1127. The court's declaration makes clear that, going forward, class members may only be subject to the detention and release authority in Section 1226(a). *Id*.

Several months later, on February 18, 2026, Judge Sykes granted the petitioners' motion to enforce the final judgment and, based on Respondents' continued noncompliance with her orders, vacated *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). *Bautista v. Santacruz*, 820 F. Supp. 3d 1016,

1032 (C.D. Cal. 2026). The Ninth Circuit subsequently stayed the vacatur of *Yajure-Hurtado* as well as Judge Sykes' order and final judgment outside the Central District of California, but declined to stay the order and final judgment inside this District. *See Bautista, et al. v. United States Department of Homeland Security, et al.*, Nos. 25-7958, 26-1044, Dkt. 14 (9th Cir. March 31, 2026). The Ninth Circuit recently issued a decision in a different habeas action agreeing with *Maldonado Bautista* on the merits and holding that individuals like Petitioner are properly subject to Section 1226(a). *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026).

In addition to the Ninth Circuit's recent decision, the final judgment in *Maldonado Bautista* has preclusive effect for members of the Bond Eligible Class like Petitioner. *See also Granados v. Warden et al.*, No. 5:26-CV-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("it appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment"); *Miguel Angel Cortez Lozano v. Ernesto Santacruz Jr. et al.*, No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026). *See generally De Corral v. Woosley*, No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second) of Judgments § 33).

Nonetheless, the Government declined to comply with the *Maldonado Bautista* final judgment after it was issued, *see Bautista*, 820 F. Supp. 3d at 1023 (discussing the Government's systematic noncompliance), at least until the Ninth Circuit issued its decision in *Rodriguez Vazquez*. Instead, the

Government continued to arrest and detain Bond Eligible Class members like Petitioner under the putative authority of Section 1225(b), even though it acknowledges that its actions are unlawful. As a result, hundreds of Bond Eligible Class members like Petitioner have been unlawfully arrested and detained in violation of their statutory and due process rights under the *Maldonado Bautista* final judgment. *Id.*

**3. Because Petitioner's Detention Has Been Unlawful from the Outset, He is Entitled to Release**

Although Respondents concede that they wrongly arrested and detained Petitioner under Section 1225(b), they argue that "to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." Dkt. 7 at 2.

The Court rejects this argument and finds that Petitioner has shown that he is entitled to release based on the Government's violation of his statutory and constitutional rights. In so holding, the Court joins the courts in the Ninth Circuit who have found that the Government's noncompliance with *Bautista* and similar rulings warrants release. *See, e.g., Reyes v. Santacruz, Jr.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); *Rodas-Dieguez v. Noem*, No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); *Maciel v. Noem*, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026). *See also Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, these protections include: (1) the requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an IJ at a bond hearing; (4) the right to appeal an adverse IJ bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an IJ based on changed circumstances. *See supra* Section II.A. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. *Rodriguez Diaz*, 53 F.4th at 1202.

But because the Government arrested Petitioner under the incorrect authority of Section 1225(b), Petitioner has been deprived of these protections. It follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Id*. (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y.

2025)).

Section 1226(a) provides critical protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See *Garcia-Maya*, 2026 WL 1965886, at *5 ("this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause"); *Bautista*, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"). *See also Bautista*, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity"). The Supreme Court has long recognized that due process requires that immigration detention bear a '"reasonable relation"' to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id*. at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondents have created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds and that he remains confined solely due to the Government's refusal to comply with the *Maldonado Bautista* judgment. Indeed, in their Answer, Respondents do not argue that Petitioner presents a danger or flight risk or that there is any other valid governmental interest advanced by his ongoing detention.

Because Petitioner's detention has been unlawful from the outset, the

Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes*, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the Government's continued refusal to comply with the *Maldonado Bautista* final judgment. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). While the Government has appealed the *Maldonado Bautista* final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Garcia-Maya*, 2026 WL 1965886, at *9 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947)). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("Federal courts are

authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); *Lujan*, 734 F.3d at 933.[2]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that: (1) Judgment be entered GRANTING the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Jesus Guadalupe Orea Ruiz's (A# 246-062-086) immediate release and prohibiting his re-detention absent a hearing before a neutral decisionmaker at which the Government must show material changed circumstances justifying his detention; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: September 8, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

[2] Because the Court concludes that Petitioner is entitled to release on his Section 1226(a) claim, it declines to address his other claims to relief.